UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

CHRISTOPHER BROWN,                          :

                      Plaintiff,     :     10 Civ. 5833 (PAC)(HBP)

      -against-                      :     REPORT AND
                                           <u>RECOMMENDATION</u>
DAVID A. PATERSON, The               :
Governor of the State
of New York, <u>et</u> <u>al</u>.,              :

                      Defendants.    :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE PAUL A. CROTTY, United States

District Judge,


I.   <u>Introduction</u>


          In a complaint filed on August 3, 2010, plaintiff

Christopher Brown, <u>pro</u> <u>se</u>, brings this action for damages pursu-

ant to 42 U.S.C. § 1983 against seventeen defendants.  Plaintiff

claims, <u>inter</u> <u>alia</u>, that he was subjected to an unreasonable

search and seizure, falsely arrested and imprisoned, and mali-

ciously prosecuted, all in connection with his arrest on drug

charges in July of 2009.  Eight defendants have moved to dismiss

the complaint for failure to state a claim, pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  Specifically,

(1) Orange County District Attorney, Francis D. Phillips, Assistant District Attorney Jessica M. Dovico, and Assistant District Attorney Steven Grasso (the "District Attorney Defendants") move to dismiss by Docket Item 22, (2) Orange County Executive, Edward A. Diana move to dismiss, also by Docket Item 22, and (3) The Legal Aid Society of Orange County, Inc., Steven A. Baldino, Gary Abramson, and Dennis McCormick[1] (the "Legal Aid Defendants") move to dismiss by Docket Items 38, 42, 46, and 50.

For the reasons set forth below, I respectfully recommend that all the forgoing motions to dismiss be granted in their entirety.

II.   Facts

A.   Plaintiff's Allegations[2]

Following an earlier conviction, plaintiff was released from prison and into the custody of the New York State Division of Parole on May 20, 2009 (Complaint, dated Apr. 24, 2010 (Docket Item 2) at 3).  On May 21, 2009, plaintiff took up residence in Room 15 of the Globe Motel, in Middletown, New York (Complaint at

---

[1] Baldino, Abramson, and McCormick are attorneys employed by The Legal Aid Society of Orange County, Inc.

[2] The facts set forth herein are drawn from plaintiff's complaint and the attached exhibits (Docket Item 2).

2

3).  In early July, 2009, plaintiff's girlfriend, Carrie Acton, moved in with plaintiff (Complaint at 3).

Plaintiff alleges that he "suffered a false arrest upon the 'rubber stamp' of an illegal search warrant" when, on July 22, 2009, Middletown City Judge Steven Brockett[3] signed a no-knock search warrant, based on perjured testimony, authorizing the search of plaintiff's motel room (Complaint at 1, 3, 8 & Ex. B).  The search warrant described a person "approximately 5'6'' in height [and] 145-150 lbs [in weight]. . . .  25-26 years of age [with] light complexion [and] a mustache with wavy dark hair" known as "Cyrus," as the "target" of the warrant and authorized the seizure of controlled substances and drug paraphernalia among other things (Complaint at Ex. B).  Middletown City Police officers executed the warrant at 9:05 p.m., even though the officers allegedly "[knew] to a moral certainty that the Affida-vit in Support if [the] search warrant was inadequate" (Complaint at 8).  The police officers seized several loose pieces of crack cocaine, one bag containing sixteen small zip-lock bags of crack cocaine, five small zip-lock bags of crack cocaine, crack pipes, a digital scale, packaging materials, four razor blades, a "wire push rod with chore boy," a letter and a card with the name

---

[3] Judge Brockett is also a defendant in this action.

3

"Cyrys" written on each, some papers, a container, and a jacket (Complaint at Ex. B ).  The plaintiff was arrested and charged with one count of criminal possession of a controlled substance in the third degree, one count of criminal possession of a controlled substance in the fifth degree, one count of criminal possession of a controlled substance in the seventh degree, and one count of criminally using drug paraphernalia in the second degree, in violation of New York Penal Law Sections 220.16, 220.06, 220.03, 220.50, respectively (Complaint at 3 & Ex. C).

Plaintiff was arraigned before Judge Brockett on July 23, 2009 and was released on his own recognizance, pursuant to New York Criminal Procedure Law § 180.80,[4] on July 28, 2001.  The police subsequently informed plaintiff's parole officer of the arrest and the charges against plaintiff (Complaint at 4 & Ex. D).  Although plaintiff maintained that he was not the intended target of the search warrant, he did acknowledge, to his parole officer, "his complicity in the crime adding that he had re-lapsed.  He stated that this was not an excuse, but he and [his]

---

[4] Section 180.80 provides that a "defendant against whom a criminal complaint has been filed" who is held for more than one-hundred-forty-four hours without a "disposition" of the complaint or the "commencement of a hearing thereon" must be released on his own recognizance.

4

girlfriend were both using and this is why the drugs/cocaine were in the room" (Complaint at 4 & Ex. E).

On August 18, 2009, plaintiff was arrested for violating the terms of his parole and was subsequently charged with resisting arrest in violation of New York Penal Law § 205.30 (Complaint at 4 & Ex. F).

Plaintiff further alleges that his defense attorney, Dennis McCormick, a staff attorney with the Legal Aid Society "did nothin[g] in plaintiff[']s defense" as "the people set out to 'Maliciously' prosecute [him] forcing Plaintiff to pro-se [sic] without knowledge of the law" (Complaint at 8).  On November 2, 2009, plaintiff wrote to McCormick, requesting a meeting because McCormick had not contacted plaintiff and had not been to see him in jail as he had promised (Complaint at 4 & Ex. H). Plaintiff also wrote to Judge Brockett on November 2, 2009, expressing his desire to testify at a preliminary hearing scheduled for December 21, 2009 (Complaint at 4 & Ex. F).  In his letter to Judge Brockett, plaintiff argued that (1) "the [search] warrant [was] defective in description of Plaintiff" because the description of the target did not properly describe him; (2) the police selectively charged him with possessing a scale, and not other drug paraphernalia that were seized, in order to bolster their untenable position that plaintiff had the intent to dis-

5

tribute narcotics; and (3) the police informant who had provided evidence against the plaintiff "gave this information out of revenge, spitefulness and simply because [plaintiff] would not get him high" (Complaint at 4-5 & Ex. F at 2-3).[5]  Plaintiff also offered to plead guilty to the charge of resisting arrest and to continue attending a "long term out patient/in patient program" in exchange for a dismissal of the drug charges and a sentence of time served for the offense of resisting arrest (Complaint at Ex. F).

On November 5, 2009, McCormick visited plaintiff at the Orange County Jail and orally delivered a plea offer that the prosecution was extending; plaintiff rejected that offer and asked McCormick to investigate the difference between the field test reports and the incident report concerning the aggregate weight of the narcotics recovered from plaintiff's motel room (Complaint at 5).  On November 6, 2009, the Legal Aid Society forwarded plaintiff a plea-offer letter from Assistant District Attorney Jessica M. Dovico (Complaint at 5 & Ex. J).  Dovico offered a sentence of one and one-half years incarceration, two years of post-release supervision, and a dismissal of all other charges in return for a guilty plea to a charge of attempted

---

[5] In his letter to Judge Brockett, plaintiff also admitted that he "did relapse [and was] smoking crack cocaine."

criminal possession of a controlled substance in the fifth degree
(Complaint at 5 & Ex. J).  In response, plaintiff sent his own
"plea proposal" letter to Dovico on November 10, 2009, offering
to plead guilty to some unspecified charge in exchange for
plaintiff's placement into an "alternative to incarceration
judicial diversion program" for one and one-half years and a
dismissal of all other charges (Complaint at 5 & Ex. K).  Also in
that letter, plaintiff complained about the fact that his attor-
ney had "deliberately" held the prosecution's offer for nineteen
days before forwarding it to him, and argued that the "the
people" were motivated by "bad faith, . . . solely motivated to
get a conviction" and that the "court" should not allow "the
people to take such a 'prejudice' approach when the people are in
violation of [New York Criminal Procedure Law § 715.50[6]]" (Com-
plaint at 5 & Ex. K).

On December 3, 2009, plaintiff wrote to the District
Attorney's Office again informing it that he intended to testify,
and to call witnesses, at the grand jury proceeding scheduled for

_____

[6] New York Criminal Procedure Law Section 715.50 provides
that within a certain amount of time following a felony drug
arrest, an analysis of the drugs should be performed and the
results should be forwarded to the district attorney's office but
"[t]he failure to have an analysis made or to forward a copy
thereof within the time specified . . . shall not be deemed or
construed to bar . . . the prosecution of a case involving such
drugs."

December 21, 2009, and requesting a copy of the affidavit that was submitted to secure the search warrant that led to his arrest (Complaint at 6 & Ex. O).  On December 15, 2009, plaintiff filed a "Notice of Order of Termination of Prosecution Pursuant to CPL 180.85(1)" requesting that the charges against him be dismissed (Complaint at 6 & Ex. Q); that motion was denied on December 21, 2009 (Complaint at 6).  On January 8, 2010, plaintiff was informed that the drug charges had been reduced and was provided with a copy of a controlled substance report (Complaint at 6 & Ex. T).  On January 27, 2010, and again on February 8, 2010, plaintiff submitted a "Motion to Dismiss" pursuant to Criminal Procedure Law Sections 170.30(1)(d), (e), (f), (g) and 30.30(1)(a) asserting that the prosecution failed in its "statutory obligation to be ready for trial within six months [after] the filing of the felony complaint" (Complaint at 6-7 & Ex. U).

On February 9, 2010, plaintiff pleaded guilty to the resisting arrest charge and agreed to a sentence of nine months on that charge in exchange for a dismissal of the drug charges (Complaint at 7 & Ex. V, Y).

On February 9 and 23, 2010, plaintiff submitted Freedom of Information Law requests to the City Court of Middletown and the Orange County District Attorney's Office, seeking the affidavit submitted in support of the search warrant executed on his

motel room (Complaint at 7 & Ex. Z); those requests were denied on March 2 and 3, 2010, on the grounds that the affidavit was a judicial record and that the warrant application "was created for law enforcement purposes, references confidential sources" and was exempt from FOIL disclosure because the witness did not testify at trial (Complaint at 7-8 & Ex. B.2, C.2).

        B.   Procedural History

        The motions that give rise to this Report and Recommendation were filed on May 2 and 24, 2011.  When plaintiff did not file a timely response to the motions, I issued an Order, dated November 28, 2011, directing plaintiff to serve and file any opposition he may have, no later than December 19, 2011 (Docket Item 61).  Despite the November 28, 2011 Order, plaintiff has still not responded to any of the pending motions.  Notwithstanding plaintiff's default in responding to the motions, I shall, address the merits of the pending motions.  See McCall v. Pataki, 232 F.3d 321, 322-23 (2d Cir. 2000); Haas v. Commerce Bank, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (Holwell, D.J.) ("[F]ailure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint.").

9

III.  <u>Analysis</u>

    A.    Standards Applicable to
        a Motion to Dismiss
        <u>Pursuant to Rule 12(b)(6)</u>

The standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are well-settled and require only brief review.

> When deciding a motion to dismiss under Rule 12(b)(6), [the court] must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader.  <u>See</u> <u>City of Los Angeles v. Preferred Communications, Inc.</u>, 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); <u>Miree v. DeKalb County</u>, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded allegations"); <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993).  "'[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  <u>Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995) (quoting <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991)).  The Court also may consider "matters of which judicial notice may be taken." <u>Leonard T. v. Israel Discount Bank of New York</u>, 199 F.3d 99, 107 (2d Cir. 1999) (citing <u>Allen v. WestPoint-Pepperill, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991)).  In order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions."  <u>Gebhardt v. Allspect, Inc.</u>, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a][b] (3d ed. 1997)).

Hoffenberg v. Bodell, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3 (S.D.N.Y. Sept. 30, 2002) (Preska, D.J.); see also In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); Johnson & Johnson v. Guidant Corp., 525 F. Supp. 2d 336, 345-46 (S.D.N.Y. 2007) (Lynch, then D.J., now Cir. J.).

The Supreme Court has clarified the proper mode of inquiry for evaluating a motion to dismiss pursuant to Rule 12(b)(6), which uses as its starting point the principle that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

> [I]n Bell Atl[antic] Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court disavowed the well-known statement in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  550 U.S. at 562.  Instead, to survive a motion to dismiss under Twombly, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

Talley v. Brentwood Union Free Sch. Dist., No. 08-790 (DRH), 2009 WL 1797627 at *4 (E.D.N.Y. June 24, 2009).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations

11

must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations, internal quotations and alterations omitted).

In evaluating a motion under Rule 12(b)(6), the court must determine whether the plaintiff has alleged any facially plausible claims. See Smith v. NYCHA, 410 F. App'x 404, 405-06 (2d Cir. 2011). A claim is plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of enti-tlement to relief." Ashcroft v. Iqbal, supra, 129 S.Ct. at 1949 (internal quotations omitted). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to re-

12

lief.'"  Ashcroft v. Iqbal, supra, 129 S.Ct. at 1950, quoting
Fed. R. Civ. P. 8(a)(2).

      "[T]he tenet that a court must accept as true all of
the allegations contained in a complaint is inapplicable to legal
conclusions."  Ashcroft v. Iqbal, supra, 129 S.Ct. at 1949; see
also Reed Const. Data Inc. v. McGraw-Hill Cos., Inc., 745 F.
Supp. 2d 343, 349 (S.D.N.Y. 2010) (Sweet, D.J.).  As a result, "a
court considering a motion to dismiss can choose to begin by
identifying pleadings that, because they are no more than conclu-
sions, are not entitled to the assumption of truth.  While legal
conclusions can provide the framework of a complaint, they must
be supported by factual allegations."  Ashcroft v. Iqbal, supra,
129 S.Ct. at 1950.

      Where, as here, a plaintiff proceeds pro se, the
complaint must be liberally construed to raise the strongest
claims that the allegations suggest.  Pabon v. Wright, 459 F.3d
241, 248 (2d Cir. 2006); Burgos v. Hopkins, 14 F.3d 787, 790 (2d
Cir. 1994).  This rule applies "with particular stringency to
[pro se] complaints of civil rights violations."  Phillip v.
Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir. 2003).  Never-
theless, the "Court [] is not obliged to reconcile plaintiff's
own pleadings that are contradicted by other matter asserted or
relied upon or incorporated by reference by a plaintiff in

drafting the complaint." <u>Fisk v. Letterman</u>, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) (Marrero, D.J.); <u>see also</u> <u>Matusovsky v. Merrill Lynch</u>, 186 F. Supp. 2d 397, 399-400 (S.D.N.Y. 2002) (Marrero, D.J.) (noting that in analyzing a motion to dismiss pursuant to Rule 12(b)(6) a court may consider "documents attached to the complaint as exhibits [and] if a plaintiff's allegations are contradicted by such . . . document[s], those allegations are insufficient to defeat a motion to dismiss").

  B. Plaintiffs'
    <u>Federal Claims</u>

   Plaintiff states that "[t]he matters in controversy arise[] under 42 U.S.C. section 1983" (Complaint at 1).

   Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

   In order to state a claim under Section 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the

United States." <u>Dwares v. City of N.Y.</u>, 985 F.2d 94, 98 (2d Cir. 1993); <u>accord</u> <u>Snider v. Dylag</u>, 188 F.3d 51, 53 (2d Cir. 1999).

Plaintiff claims that, as a result of the defendants' conduct, he was (a) subjected to an unreasonable search and seizure, (b) falsely arrested, (c) falsely imprisoned, (d) improperly charged by the police, (e) maliciously prosecuted, (f) unfairly treated by the District Attorney's Office during plea negotiations, (g) not timely provided with a controlled substance report and not provided with a copy of the search warrant application, and (h) poorly represented by his Legal Aid attorney which forced him to represent himself.

The District Attorney Defendants and the Orange County Executive, Edward Diana, argue that plaintiff's complaint should be dismissed because plaintiff has (a) failed to meet the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure, (b) failed to establish a claim under 42 U.S.C. § 1983, (c) failed to state a claim for malicious prosecution, (d) failed to allege sufficiently a claim for failure to train, and (e) the District Attorney Defendants are immune from suit by virtue of the Eleventh Amendment and absolute prosecutorial immunity.

The Legal Aid Defendants argue that (a) this Court lacks subject matter jurisdiction under the <u>Rooker</u>-<u>Feldman</u>

doctrine, (b) <u>Younger</u> abstention bars plaintiff's claims, (c) the Legal Aid Defendants did not act under color of state law, (d) the plaintiff has failed to allege a state law legal malpractice claims and, in any event, this Court should exercise its discretion and dismiss that claim.

        1.   District Attorney
            <u>Defendants</u>

The complaint fails to state a claim against all the District Attorney Defendants.

The complaint itself does not specify whether plaintiff is asserting his claims against the District Attorney Defendants in the their individual or personal capacities.  Construing the complain leniently, I shall assume plaintiff intends to assert claims against the District Attorney Defendants in both capacities.

To the extent plaintiff asserts claims against the District Attorney of Orange County and his assistants in their official capacities, all are immune from suit pursuant to the Eleventh Amendment because a claim against a state official in his official capacity is deemed to be a claim against a state. <u>Escobar v. City of N.Y.</u>, 05-cv-3030 (ENV/CLP), 2007 WL 1827414 at *3 (E.D.N.Y. Jun. 25, 3007) ("When a New York State county

16

district attorney is sued in his official capacity for quasi-judicial acts . . . he is 'properly deemed to be an official of New York State and [is] entitled to invoke Eleventh Amendment immunity.'") quoting Ying Jing Gan v. City of N.Y., 996 F.2d 522, 536 (2d Cir. 1993), and Peterson v. Tomaselli, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007) (Holwell, D.J.); accord Rodriquez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (Eleventh Amendment immunity extends to assistant district attorneys sued in their official capacities; Watanmaker v. Clark, 09-CV-3877 (JFB)(ARL), 2010 WL 3516344 at *7 (E.D.N.Y. Aug. 31, 2010); Washington v. Kelly, 09 Civ. 4638 (SAS), 2004 WL 830084 at *4 (S.D.N.Y. Apr. 13, 2004) (Scheindlin, D.J.).

       To the extent the complaint can be construed as asserting a claim against the District Attorney Defendants in their individual capacities, they are shielded from liability by absolute prosecutorial immunity.  "'It is now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from civil suit for damages under § 1983.'"  Crews v. County of Nassau, 06-CV-2610 (JFB)(WDW), 2007 WL 4591325 at *13 (E.D.N.Y. Dec. 27, 2007), quoting Shmueli v. City of N.Y., 424 F.3d 231, 236 (2d Cir. 2005).  "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts,

regardless of motivation, associated with [the prosecutor's] function as an advocate.'"  Hill v. City of N.Y., 45 F.3d 653, 661 (2d Cir. 1995), quoting Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994).  See generally Butz v. Economou, 438 U.S. 478, 509-10 (1978); Imbler v. Pachtman, 424 U.S. 409, 427-28 (1976).

Plaintiff's only substantive allegations against the District Attorney Defendants are that "the people subject them-selves to the 'Bad Faith' approach [apparently, in connection with plea bargaining] solely motivated to get a conviction"; "the people continue to take the 'prejudice' approach for conviction based upon a presumptive field test"; and "the County is held liable as a result of [the Judge] acting in concert with the Prosecution Team . . . for 'Deliberate Indifference' on the grounds that the Defendants are so un-supervised, un-trained or lack commonsense [sic] to interpret AGUILAR PRONGS" (Complaint at 5, 6, 9).  The complaint does not attribute any of these actions to any specific District Attorney Defendant.

Under the most liberal reading possible, plaintiff's allegations can be construed as claims against the District Attorney Defendants for their acts committed in connection with the decision to prosecute plaintiff or in plea bargaining. However, these actions fall squarely within the scope of absolute prosecutorial immunity.  See Imbler v. Pachtman, supra, 424 U.S.

18

at 431 (State prosecutors are entitled to absolute immunity for
that conduct "intimately associated with the judicial phase of
the criminal process."); Flagler v. Trainor, -- F.3d --, 2011 WL
5829660 at *2-*3 (2d Cir. Nov. 21, 2011); Hill v. City of N.Y.,
supra, 45 F.3d at 661; Sharp v. Morgenthau, 08 Civ. 5919
(PKC)(FM), 2010 WL 339767 at *3 (S.D.N.Y. Jan. 25, 2010) (Castel,
D.J.) ("It is clear that Morgenthau and the ADA Defendants were
functioning as prosecutors when they initiated the criminal case
against plaintiff, and appeared in Criminal Court during the
pendency of the case."), citing Shmueli  v. City of N.Y., supra,
424 F.3d at 237; see also Taylor v. Kavanagh, 640 F.2d 450, 451-
52 (2d Cir. 1981) (prosecutorial function includes plea bargain-
ing); Miller v. County of Nassau, supra, 467 F. Supp. 2d at 316
(same); Watanmaker v. Clark, supra, 2010 WL 3516344 at *8 (even
intentional misconduct is not actionable if undertaken "as an
advocate in the prosecution against [a criminal defendant]").

        Thus, plaintiff's Section 1983 claims against all the
District Attorney Defendants should be dismissed.[7]

---

        [7] The District Attorney Defendants also argue that the
complaint fails to state a claim against them because the
complaint does not allege the personal involvement of each of the
District Attorney Defendants in the alleged violations of
plaintiff's federally protected rights.  "It is well settled in
this Circuit that 'personal involvement of defendants in alleged
constitutional deprivations is a prerequisite to an award of
                                        (continued...)

2.    County Executive
      <u>Edward Diana</u>

Although the summons names Orange County Executive, Edward Diana, "individually, and in [his] official capacit[y]," the complaint does not specify in what capacity Diana is being sued and, apart from naming him in the caption, contains no references to him whatsoever.  Even if I assume that plaintiff intends to sue Diana in both capacities, the complaint against him must be dismissed.

To the extent the complaint can be construed as asserting claims against Diana in his official capacity, it "'represent[s] only another way of pleading an action against an entity of which [Diana] is an agent.'"  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985), <u>quoting</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).  The absence of any allegations against Diana, precludes the possibility that Orange County could be liable for the acts of Diana.  In theory, Orange County could be liable under Section 1983 for violations of plaintiff's federally

---

[7](...continued)
damages under § 1983.'"  <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994), <u>quoting</u> <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991).  Although this argument also appears to be meritorious, I do not reach it because the Eleventh Amendment and the doctrine of absolute prosecutorial immunity by themselves require the dismissal of the complaint as to the District Attorney Defendants.

protected rights committed pursuant to an official policy, custom or practice, Mayo v. County of Albany, 357 F. App'x 339, 341 (2d Cir. 2009), citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978) and Ciraolo v. City of N.Y., 216 F.3d 236, 242 (2d Cir. 2000); accord Coon v. Town of Springfield, 404 F.3d 683, 686 (2d Cir. 2005).  However, in the absence of an allegation that Diana violated plaintiff's federal rights, it's unnecessary to inquire whether Diana acted pursuant to a county policy, custom or practice because a necessary predicate for county liability -- an alleged violation of plaintiff's federal rights by a county agent -- is missing.

     Even if I construe the complaint as an inartful attempt to state a claim directly against Orange County, without regard to Diana's conduct, and that Diana was intended only to be a nominal defendant, the complaint still fails because it does not allege any injury to plaintiff resulting from a policy, custom or practice of Orange County.  To the contrary, the complaint does not allege any injury to plaintiff from any conduct attributable to Orange County.  Although the complaint contains numerous references to the "people," (Complaint at 5, 6, 9), these refer-ences appear to relate exclusively to conduct by the District Attorney and his staff concerning the prosecution of plaintiff. In New York, with respect to non-administrative, prosecutorial

21

conduct, the District Attorney and his staff represent the state, not the county or municipality to which they are assigned.  Reid v. Schuman, 83 F. App'x 376, 377 (2d Cir. 2003), citing Ying Jing Gan v. City of N.Y., supra, 996 F.2d at 536; accord Amaker v. N.Y.S. Dep't of Corr. Servs., 435 F. App'x 52, 54 (2d Cir. 2011); Woodward v. Office of Dist. Att'y, 689 F. Supp. 2d 655, 659 (S.D.N.Y. 2010) (Marrero, D.J.).  Thus, the references in the complaint to the "people" cannot be deemed to refer to conduct attributable to Orange County.

The only other reference in the complaint to conduct arguably attributable to Orange County is set forth in the following sentences:

> As the people set out to "Maliciously" prosecute Plain-
> tiff, attorney Dennis [M]cCormick did nothin[g] in
> Plaintiff[']s defense, forcing Plaintiff to pro-se
> [sic] without knowledge of the law, thus, Orange County
> policy makers plus delegated subordinates continuely
> [sic] act in concert to falsely imprison and deprive
> his USCA AMENDS [sic] contrary to clearly established
> Supreme Court President [sic], therefore, the County is
> held liable as a result of Judge Steven Brockett acting
> in concert with the Prosecution team as well as Agent
> of the Government for "Deliberate Indifference" on the
> grounds that the Defendants are so un-supervised,
> untrained or lack commonsen[s]e to interp[r]et AGUILAR
> PRONGS, see Aguilar [v.] Texas 378 U.S. 108.
>
> These acts repr[e]sent a pattern of events demon-
> strating intentional imprisonment and deprivation of
> USCA rights and has caused Plaintiff los[s] of family
> ties, mental and emotional anguish as a result

(Complaint at 8).

22

The foregoing sentences offer no facts to establish the existence a county custom, policy or practice.  Even when read liberally, the forgoing allegations do not identify an Orange County policy or custom and do not plead any facts linking that policy or custom to the alleged constitutional deprivations.  See Batista v. Rodriguez, supra, 702 F.2d at 397 ("The mere invocation of the pattern or plan [will] not suffice without this causal link." (internal quotations omitted)).  In addition, conclusory allegations of misconduct are insufficient to support a claim of municipal policy or custom.  See, e.g., Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning); Plair v. City of N.Y., 789 F. Supp. 2d 459, 469-70 (S.D.N.Y. 2011) (Sweet, D.J.) (dismissing the plaintiff's claim because his reliance on conclusory allegations without factual support "render[ed] his Monell allegations insufficient under Twombly and Iqbal"); Covington v. City of N.Y., 916 F. Supp. 2d 282 (S.D.N.Y.) (Scheindlin, D.J.) (adopting Report & Recommendation of Peck, M.J.), citing DeDiego v. City of New Britain, 93-CV-0391, 1994 WL 70280 at *2 (D. Conn. Jan. 31, 1994) ("[T]he simple recitation

23

that there was a failure to train municipal employees does not
suffice to allege that a municipal custom or policy caused the
plaintiff's injury").  Plaintiff's statements, at best, communi-
cate his frustration with the criminal justice system and convey
his speculations and conclusions as to what he perceived went
wrong with his criminal prosecution.  That is insufficient to
state a claim against Orange County.

        To the extent the complaint can be read to assert a
theory of liability against the County based on conduct by a
policy maker -- a feat which requires an extremely liberal
interpretation -- the complaint does not allege conduct by
individuals with the responsibility of establishing final govern-
ment policy with respect to the activity alleged.  Pembaur v.
City of Cincinnati, 475 U.S. 469, 482-83 (1986) ("The fact that a
particular official -- even a policymaking official -- has
discretion in the exercise of particular functions does not,
without more, give rise to municipal liability based on an
exercise of that discretion.  The official must also be responsi-
ble for establishing final government policy respecting such
activity before the municipality can be held liable.")

        Even if I were to construe plaintiff's pleadings as
attempting to state a claim against Orange County for failing to
train Judge Brockett regarding the standards for issuing search

24

warrants, the claim would still fail as a matter of law.  Orange County has no duty to train Judge Brockett.  Orange County is not responsible for, and takes no part in, the training and supervision of municipal and city judges which sit within its boundaries.  Municipal court judges' training and the rules they must follow are imposed by the state legislature and the chief administrator of New York courts.  See N.Y. Const., art. VI, § 17; Berry v. Vill. of Millbrook, -- F. Supp. 2d --, 09 Civ. 4234 (KMK), 2011 WL 4445636 at *6-*7 (S.D.N.Y. Sept. 26, 2011) (Karas, D.J.).  Therefore, Orange County cannot be held liable for a failure to train Judge Brockett.  See also, Uniform City Ct. Act § 102, available at N.Y. Jud. Ct. Acts, pt. 3 (McKinney) (City Courts are part of the Unified Court System); Berry v. Vill. of Millbrook, supra, 2011 WL 4445636 at *7 ("[W]hen a municipal judge enforced state law he does not act as a municipal official or lawmaker, but rather serves only to effectuate state policies." (citations ommitted)), quoting Estes-El v. Town of Indian Lake, 954 F. Supp. 527, 536 (N.D.N.Y. 1997).[8]

---

[8] In addition, despite plaintiff's assertion to the contrary (Complaint at 8), the County cannot be held liable for Judge Brockett's actions for the additional reason that a municipal or city judge is not a county policymaker.  Berry v. Vill. of Millbrook, -- F. Supp. 2d --, 09 Civ. 4234 (KMK), 2011 WL 4445636 at *6 (S.D.N.Y. Sept. 26, 2011) (Karas, D.J.); Rodriguez v. City of N.Y., 02 Civ. 8203 (SAS), 2004 WL 444089 at *4 (S.D.N.Y. Mar.
(continued...)

To the extent the complaint purports to state a claim against Diana in his personal capacity, the absence of allegations against Diana in the body of the complaint is a fatal defect.  "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'"  Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (Sweet, D.J.), quoting Morabito v. Blum, 528 F. Supp. 252, 262 (S.D.N.Y. 1981) (Ward, D.J.); Bernstein v. City of N.Y., 06 Civ. 895 (RMB), 2007 WL 1573910 at *10 (S.D.N.Y. May 24, 2007) (Berman, D.J.); Holloway v. Carey, 482 F. Supp. 551, 553 (S.D.N.Y. 1979) (Weinfeld, D.J.).

Plaintiff also fails to state a claim against Diana in his personal capacity because he does not allege facts which, if true, would establish Diana's personal involvement in any constitutional violation.  Wright v. Smith, supra, 21 F.3d at 501. "[A]n allegation that [Diana] is in a high position of authority . . . is, in and of itself, insufficient to impose liability absent [an allegation] of personal involvement in the constitutional deprivation."  Wallace v. Conroy, 945 F. Supp. 628, 637-38

---

[8](...continued)
10, 2004) (Scheindlin, D.J.).

(S.D.N.Y. 1996) (Leisure, D.J.)(adopting Report & Recommendation of Katz, M.J.).

Accordingly, plaintiff's claim against Diana, in his official and individual capacity, should be dismissed.

### 3.   Legal Aid Defendants

The Legal Aid Defendants move to dismiss the claims against them, arguing they are not state actors.

To be actionable under Section 1983, "the challenged conduct [must have been] attributable at least in part to a person acting under color of state law . . . ." Dwares v. City of N.Y., supra, 985 F.2d at 98; see also Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005); Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004); Varela v. Demmon, 491 F. Supp. 2d 442, 450 (S.D.N.Y. 2007) (Stein, D.J., adopting Report & Recommendation of Gorenstein, M.J.).  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).

Court-appointed attorneys, including attorneys associ-ated with the Legal Aid Society, do not act under color of state

law when representing their clients.  <u>Polk County v. Dodson</u>, 454
U.S. 312, 325 (1981); <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 65-66 (2d
Cir. 1997); <u>McNeill v. New York</u>, 06-CV-4843 (NGG), 2006 WL
3050867 at *4 (E.D.N.Y. Oct. 24, 2006); <u>Fisk v. Letterman</u>, <u>supra</u>,
401 F. Supp. 2d at 378.

    Here, plaintiff alleges that McCormick represented him
in connection with two arrests.  No other connection between the
Legal Aid Defendants and the state is alleged.  The array of
authorities cited above demonstrates that plaintiff's allegations
are insufficient to meet Section 1983's state action requirement.

    Furthermore, plaintiff does not make any allegations
against the Legal Aid Defendants Baldino and Abramson.  There-
fore, claims against these two defendants should be dismissed as
plaintiff has failed to state a claim against them, <u>Dove v.
Fordham Univ.</u>, <u>supra</u>, 56 F. Supp. 2d at 335, and failed to allege
their personal involvement in a constitutional deprivation.
<u>Wright v. Smith</u>, <u>supra</u>, 21 F.3d at 501.

    Accordingly, the claims against the Legal Aid Defen-
dants should be dismissed.[9]

---

    [9] Although other arguments raised by the Legal Aid
Defendants, in favor of dismissal, appear to have merit, I need
not reach those arguments because dismissal is plainly
appropriate for the reasons stated in the text.

D.   Claims Against
     Judge Brockett

Although Judge Brockett has not moved to dismiss plaintiff's complaint, "this Court may, sua sponte, dismiss a complaint for lack of subject matter jurisdiction, based on a finding of judicial immunity." Miller v. County of Nassau, 467 F. Supp. 2d 308, 312 (E.D.N.Y. 2006), citing Daniels v. Appellate Div. Of State Supreme Court, 97 Civ. 5113 (DC), 1997 WL 528060 at *1 (S.D.N.Y. Aug. 27, 1997) (Chin, then D.J., now Cir. J.); Fisch v. Consulate Gen., 11 Civ. 4182 (SAS), 2011 WL 3847398 at *1 (S.D.N.Y. Aug. 30, 2011) (Scheindlin, D.J.); Blash v. Amsterdam, 98 Civ. 7117 (SAS), 1998 WL 760239 at *1 (S.D.N.Y. Oct. 30, 1998) (Scheindlin, D.J.).

"It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction." Miller v. County of Nassau, supra, 467 F. Supp. 2d at 312, citing Mireles v. Waco, 502 U.S. 9, 9-12 (1991), and Maestri v. Jutkofsky, 860 F.2d 50, 52-53 (2d Cir. 1988).

> The Supreme Court has emphasized that the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citation omitted). Absolute immunity exists "however erroneous the act may have been, however injurious in its consequences it may have

29

> proved to the plaintiff." <u>Bradley v. Fisher</u>, 13 Wall.
> 335, 80 U.S. 335, 347, 20 L.Ed. 646 (1871).  "The cloak
> of immunity is not pierced by allegations of bad faith
> or malice." <u>Tucker v. Outwater</u>, 118 F.3d 930, 932 (2d
> Cir. 1997).  Indeed, the doctrine of judicial immunity
> is so expansive that it is overcome only when (1) the
> action is nonjudicial, i.e., not taken in the judge's
> judicial capacity; or (2) the action, although judicial
> in nature, is performed in the complete absence of any
> jurisdiction.  <u>Mireles</u>, 502 U.S. at 11-12, 112 S.Ct.
> 286.

<u>Miller v. County of Nassau</u>, <u>supra</u>, 467 F. Supp. 2d at 312.

Here, plaintiff fails to allege any actions committed by Judge Brockett that were performed outside of the scope of his jurisdiction.  The entirety of plaintiff's allegations against Judge Brockett relate to the Judge's role in authorizing the search of plaintiff's residence.  Given the most liberal reading possible, plaintiff's claims against Judge Brockett are barred by absolute judicial immunity and the claims should be dismissed.

E.   Plaintiffs'
     <u>State-Law Claims</u>

To the extent plaintiff alleges state law claims against the moving defendants,[10] I recommend they be dismissed. "[A] district court 'may decline to exercise supplemental juris-

---

[10] Although it is not completely clear, the plaintiff may be attempting to allege a state law malpractice claim against his defense attorney, McCormick, of the Legal Aid Society, and a claim under the New York Freedom of Information Law, N.Y. Pub. Off. Law, art. VI.

diction' if it 'has dismissed all claims over which it has original jurisdiction.'"   Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006), quoting 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." (citation omitted)).  Thus, because I recommend that all of plaintiff's federal claims against the moving defendants be dismissed, I further recommend that any state law claims plaintiff may have alleged against the moving defendants be dismissed.

IV.  Conclusion

        For all the foregoing reasons, I respectfully recommend that the motions to dismiss made by defendants Francis D. Phillips, Jessica M. Dovico, Steven Grasso, Edward A. Diana, The Legal Aid Society of Orange County, Inc., Steven A. Baldino, Gary

Abramson, and Dennis McCormick (Docket Items 22, 38, 42, 46, 50) be granted in their entirety.  I also recommend that all claims against Steven Brockett be dismissed.  If accepted, this Report and Recommendation will result in the dismissal of all claims against the above named defendants.

V.  <u>Objections</u>

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of this Report and Recommendation to file written objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a) and 6(d).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, United States District Judge, 500 Pearl Street, Room 735, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d

55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-

38 (2d Cir. 1983).

Dated:   New York, New York
         December 27, 2011

                                   Respectfully submitted,


                                   _____
                                   HENRY PITMAN
                                   United States Magistrate Judge

Copies mailed to:

Mr. Christopher Brown
154 North Miller Street
Newburgh, New York   12550

Mr. Christopher Brown
ID # 00-A-0395
Cape Vincent Correctional Facility
Route 12E,
P.O. Box 739
Cape Vincent, N.Y. 13618

Susan Z. Stockburger, Esq.
Orange County Department of Law
255 Main Street
Goshen, New York   10924

William G. Scher, Esq
Garbarini & Scher, P.C.
432 Park Avenue South
New York, New York   10016

Alex J. Smith, Esq.
6 North Street
Middletown, New York   10940

Charles F. Sanders, Esq.
State of New York
 Office of the Attorney General
120 Broadway
New York, New York 10271-0332