UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- x
CHRISTOPHER BROWN,                            :
                                             :
                    Plaintiff,                :
                                             :
        - against -                           :
                                             :
DAVID A. PATERSON, The Governor of            :
the State of New York, et al.,                :
                                             :
                    Defendants.               :
-------------------------------------------------- x

```
┌─────────────────────────────────────────┐
│ USDC SDNY                                 │
│ DOCUMENT                                  │
│ ELECTRONICALLY FILED                      │
│ DOC #: _____                   │
│ DATE FILED: February 28, 2012             │
└─────────────────────────────────────────┘
```

10 Civ. 5833 (PAC) (HBP)

ORDER ADOPTING R&R

HONORABLE PAUL A. CROTTY, United States District Judge:

On August 3, 2010, pro se plaintiff Christopher Brown ("Brown") instituted this 42

U.S.C. § 1983 action against seventeen defendants, alleging that he was subjected to an

unreasonable search and seizure, false arrest and imprisonment, and malicious prosecution.  On

August 10, 2010, this Court referred the matter to Magistrate Judge Henry Pitman for general

pretrial matters and dispositive motions.

On May 2 and May 24, 2011, eight defendants moved to dismiss Brown's complaint,

pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim, including: Francis D. Phillips,

Assistant District Attorney Jessica M. Dovico, and Assistant District Attorney Steven Grasso

(collectively, the "District Attorney Defendants"); Orange County Executive, Edward A. Diana;

The Legal Aid Society of Orange County, Inc., Steven A. Baldino, Gary Abramson, and Dennis

McCormick (collectively, the "Legal Aid Defendants").  Magistrate Judge Pitman directed

Brown to respond to these motions, but Brown failed to do so.  Notwithstanding the default,

Magistrate Judge Pitman considered the motions to dismiss on their merits; and on December 27,

2011, he issued a Report and Recommendation ("R&R") recommending that the Court grant

defendants' motions to dismiss in their entirety.  Further, he recommended dismissing, <u>sua</u> <u>sponte</u>, Brown's claims against Judge Brockett.  Brown did not file any objections to the R&R.

On December 13, 2011, seven additional defendants moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim, including: Ramon Bethencourt, Matthew T. Byrne, Mr. Colon, David W. Franck, Patrick H. Gass, Matthew Johnson, and Mr. Mecocci (collectively, the "Police Officer Defendants").  Again, Brown did not oppose the motion.  This motion is not addressed in the R&R, but this Court will consider the motion; and it will also address, <u>sua</u> <u>sponte</u>, Brown's claims against the last defendant, David Paterson, the former Governor of New York.

For the reasons that follow, the Court adopts Magistrate Judge Pitman's R&R in its entirety.  The Court also GRANTS the Police Officer Defendants' motion to dismiss and, <u>sua</u> <u>sponte</u>, dismisses Brown's claims against defendant Paterson.  Accordingly, the Court dismisses Brown's complaint in its entirety.

## **BACKGROUND**

### I.      Facts[1]

On May 20, 2009, Brown was released from prison into the custody of the New York State Division of Parole.  On May 21, 2009, Brown moved into Room 15 of the Globe Motel, in Middletown, New York.  On July 22, 2009, Middletown City Judge Steven Brockett signed a no-knock search warrant authorizing the search of Brown's motel room.  The search warrant authorized the seizure of controlled substances and drug paraphernalia, and specified that the target was a 25-26 year-old, 5'6", 145-150 lbs, dark haired male known as "Cyrus."  In executing the warrant, the police officers seized, <u>inter</u> <u>alia</u>, several loose pieces of crack cocaine, one bag containing sixteen small zip-lock bags of crack cocaine, five small zip-lock bags of crack

---

[1]  Unless otherwise noted, the facts are taken from the R&R.

cocaine, crack pipes, a digital scale, packaging materials, four razor blades, a "wire push rod

with chore boy," and a letter and card with the name "Cyrys" written on each.  Brown was

arrested and charged with one count of criminal possession of a controlled substance in the third

degree, one count of criminal possession of a controlled substance in the fifth degree, one count

of criminal possession of a controlled substance in the seventh degree, and one count of

criminally using drug paraphernalia in the second degree.  Brown was arraigned in front of Judge

Brockett and released on his own recognizance, pursuant to N.Y. Crim. Proc. § 180.80.

Police officers informed Brown's parole officer of Brown's arrest and the charges against

him.  Brown told his parole officer that he was not the intended target of the search warrant, but

admitted that he was "complicit[ ] in the crime" and that "he and his girlfriend were both using

and this is why the drugs/cocaine were in the room."  (See Compl. Ex. E.)  A parole warrant was

issued for Brown's arrest based on Brown's parole violations, which included: (1) being arrested

and charged with drug offenses on July 22, 2009; (2) possessing cocaine on July 22, 2009; and

(3) possessing drug paraphernalia on July 22, 2009.  (See Compl. Ex. E.)  On August 18, 2009,

Brown was arrested on the parole warrant and subsequently charged with resisting arrest.

Dennis McCormick, a staff attorney with the Legal Aid Society, was assigned to defend Brown.

On February 9, 2010, Brown pled guilty to resisting arrest and agreed to a sentence of

nine months in exchange for dismissal of all other charges.  On February 9 and 23, 2010, Brown

entered Freedom of Information Law ("FOIL") Requests to the City Court of Middletown and

the Orange County District Attorney's Office, requesting the affidavit which supported the

search warrant executed on his motel room.  On March 2 and 3, 2010, Brown's requests were

denied as exempt from FOIL disclosure because the affidavit was a judicial record and the

warrant application was for law enforcement purposes, referenced confidential sources, and because the informant did not testify at trial.

**II.      Magistrate Judge Pitman's Report and Recommendation**

Magistrate Judge Pitman thoroughly detailed Brown's factual allegations; and carefully reviewed the legal standard.  He then addressed: (1) Brown's claims against the District Attorney Defendants; (2) Brown's claims against Orange County Executive, Edward A. Diana; (3) Brown's claims against the Legal Aid Defendants; (4) Brown's claims against Judge Brockett; and (5) any possible state law claims.  Magistrate Judge Pitman recommended that the Court dismiss all of the claims addressed.

*1.  District Attorney Defendants*

The District Attorney Defendants are immune from suit in their official capacities, because they are "deemed to be [ ] official[s] of New York State and [are] entitled to invoke Eleventh Amendment immunity."  Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993).  The District Attorney Defendants are also immune from suit in their individual capacities so long as they were acting within the scope of their duties in initiating and pursuing a criminal prosecution, rather than in an administrative or other capacity.  See Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995).  Magistrate Judge Pitman found that Brown's claims against the District Attorney Defendants related to their conduct in deciding to prosecute Brown or in plea bargaining with Brown, all of which falls within the contours of absolute prosecutorial immunity.  (R&R 18.)  Magistrate Judge Pitman thus recommended that the Court dismiss all of Brown's claims against the District Attorney Defendants.  (Id.19.)

*2.  Orange County Executive, Mr. Diana*

Magistrate Judge Pitman considered whether Brown adequately stated a claim against

Mr. Diana in his official capacity, his individual capacity, or nominally, on behalf of Orange

County.  (R&R 20-27.)  Magistrate Judge Pitman found that Brown's claim failed under any

analysis.

With respect to claims against Mr. Diana in his official capacity, Magistrate Judge

Pitman determined that Brown's claims "represent only another way of pleading an action

against an entity of which [Diana] is an agent."  (R&R 20 (quoting Kentucky v. Graham, 473

U.S. 159, 165 (1985).)  He found that "[t]he absence of any allegations against Diana, precludes

the possibility that Orange County could be liable" for Mr. Diana's acts.  (R&R 20.)

With respect to a direct claim against Orange County, Magistrate Judge Pitman found

that Brown neither alleged facts to establish the existence of an Orange County policy, custom,

or practice, nor alleged facts to establish that Brown was injured as a result of any conduct

attributable to Orange County.  (R&R 21-22.)  Brown's allegations against the "people," which

appears to refer to the District Attorney Defendants, are insufficient to state a claim against

Orange County because "[w]hen prosecuting a criminal matter, a district attorney in New York

State . . . represents the State not the county."   Ying Jing Gan, 996 F.2d at 536 (quoting Baez v.

Hennessy, 853 F.2d 73, 77 (2d Cir.1988), cert. denied, 488 U.S. 1014 (1989).)  Likewise,

Brown's allegations regarding Judge Brockett's training are insufficient to state a claim against

Orange County because "judges' training, as well as the rules they must follow, are imposed by

the state legislature and the chief administrator of the courts," not a particular county.  Berry v.

Village of Millbrook, No. 09–CV–04234 (KMK), 2011 WL 4445636, at *7 (S.D.N.Y. Sept. 26,

2011).  Moreover, to the extent Brown attempted to state a claim based on the conduct of an

Orange County policymaker, his claim fails because he does not allege that a policymaker was responsible for establishing a final government policy respecting the defendants' alleged conduct.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 482-83 (1986) ("The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.").

Finally, Magistrate Judge Pitman found that any claim against Mr. Diana in his personal capacity fails because Brown did not state how Mr. Diana violated the law or injured Brown, see Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999), or how Mr. Diana was otherwise personally involved with any constitutional violations, Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  (See R&R 26.)

Accordingly, Magistrate Judge Pitman recommended that the Court grant Mr. Diana's motion to dismiss in its entirety.  (R&R 27.)

### 3.  Legal Aid Defendants

To state a claim under § 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  Snider v. Dylag, 188 F.3d 51, 52 (2d Cir. 1999).

Court appointed attorneys, such as the Legal Aid Defendants, do not act under color of state law when representing a client.  Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981). Accordingly, Magistrate Judge Pitman recommended that the Court dismiss Brown's § 1983 claims against the Legal Aid Defendants.  (R&R 28.)

*4.  Judge Brockett*

Magistrate Judge Pitman recommended that the Court dismiss, sua sponte, Brown's

claims against Judge Brockett.  (R&R 30.)  Judges "have enjoyed judicial immunity since the

seventeenth century" and "will be held liable only when [they] act[ ] in the clear absence of all

jurisdiction."  Fisch v. Consulate Gen. of Rep. of Poland, 11 Civ. 4182 (SAS), 2011 WL

3847398, at *1 (S.D.N.Y. Aug. 30, 2011).  "[I]n cases of judicial immunity, a court may dismiss

a defendant sua sponte, without affording a hearing or other notice of dismissal."  Id.  Magistrate

Judge Pitman found that Brown "fails to allege any actions committed by Judge Brockett that

were performed outside of the scope of his jurisdiction."  (R&R 30.)  Magistrate Judge Pitman

thus concluded that Brown's claims against Judge Brockett were barred by absolute judicial

immunity, and recommended the Court dismiss these claims.  (Id.)

*5.  State-Law Claims*

Magistrate Judge Pitman noted that, while not completely clear, Brown may be

attempting to allege a state law malpractice claim against his defense attorney, Mr. McCormick,

of the Legal Aid Society, and a claim under the New York Freedom of Information Law, N.Y.

Pub. Off. Law, art. VI.  Magistrate Judge Pitman recommended that the Court decline to exercise

supplemental jurisdiction over any possible state law claims that Brown was attempting to raise.

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed

all claims over which it has original jurisdiction.'"  Kolari v. New York Presbyterian Hosp., 455

F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C.  § 1367(c)(3)).  Thus, "if the federal claims are

dismissed before trial . . . the state claims should be dismissed as well," based on considerations

of judicial economy, convenience, fairness, and comity.  Carnegie-Mellon Univ. v. Cohill, 484

U.S. 343, 350 n.7 (1988) (quoting Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  Having

recommended that the federal claims against the moving defendants be dismissed, Magistrate

Judge Pitman recommended that the Court decline to exercise supplemental jurisdiction and

dismiss any state law claims.

## DISCUSSION

### I.       The Report and Recommendation

In reviewing a report and recommendation, a court "may accept, reject, or modify, in

whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §

636(b)(1)(C).  Where a party makes a timely written objection, the district court must review the

contested issues de novo.  Greene v. WCI Holdings Corp., 956 F. Supp 509, 513 (S.D.N.Y.

1997).  "The district court may adopt those portions of the report to which no timely objection

has been made, so long as there is no clear error on the face of the record."  Feehan v. Feehan,

No. 09 Civ. 7016, 2011 WL 497776 at *1 (S.D.N.Y. Feb. 10, 2011).  Brown did not file any

objections to the R&R.

The Court has reviewed the R&R for clear error and finds none.  Accordingly, the Court

adopts Magistrate Judge Pitman's R&R in its entirety.

### II.      Brown's Remaining Claims

The Court now turns to Brown's claims against defendant Paterson, the former Governor

of New York, and the Police Officer Defendants.

#### 1.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A

claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"[T]hreadbare recitals of the elements of the cause of action, supported by mere conclusory

statements, do not suffice." Id.  Pleadings of a pro se plaintiff are held to a less stringent standard

and should be construed liberally "to raise the strongest arguments that they suggest." Pabon v.

Wright, 459 F.3d 241, 248 (2d Cir. 2006).  The Court, however, need not "reconcile plaintiff's

own pleadings that are contradicted by other matter asserted or relied upon or incorporated by

reference by a plaintiff in drafting the complaint."  Fisk v. Letterman, 401 F. Supp. 2d 362, 368

(S.D.N.Y. 2005).

*2.  Former Governor David Paterson*

Brown does not state whether he is suing former Governor David Paterson in his official

or individual capacity.  A governor is immune from suit in his official capacity, pursuant to the

Eleventh Amendment, so long as his "conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Al-Jundi v. Estate of

Rockefeller, 855 F.2d 1060, 1066-67 (2d Cir. 1989).  Ying Jing Gan v. City of New York, 996

F.2d 522, 528 (2d Cir. 1993).  While a governor is not immune from suits in his individual

capacity, the fact that the Governor is "in a high position of authority is an insufficient basis for

the imposition of personal liability."  Humpherys v. Nager, 962 F. Supp. 347, (E.D.N.Y. 1997)

(quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977).)  Brown's only factual

allegation regarding Paterson is that he was Governor at the relevant time.  (See Compl. at 2.)

This sole allegation is insufficient to state a claim against Paterson in either his official or

individual capacity.  Accordingly, Brown's claims against Paterson are dismissed.

*3. Police Officer Defendants*

The Police Officer Defendants argue that Brown's claims § 1983 claims are barred under Heck v. Humphrey, 512 U.S. 477 (1994) (hereinafter, "Heck").

In Heck, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 486-87. The Court further explained that:

> An example of . . . a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful-would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, the § 1983 action will not lie.

Id. at 487 n.6 (internal citations omitted). The Court also noted that to bring a malicious prosecution claim under § 1983, the plaintiff must show that the prior criminal proceeding terminated in favor of the accused. Id. at 484.

There is no dispute that Brown's resisting arrest conviction has not been reversed, expunged, declared invalid, or otherwise called into question.[2] Resisting arrest, under N.Y. Penal Law § 250.30, is defined as intentionally preventing or attempting to prevent a police officer from effecting an authorized arrest. Brown's resisting arrest charge was based on his

_____

[2] The Court notes that Brown's plea to the resisting arrest charge was made, in part, to satisfy all the charges in the case. (Compl. at 7.)

attempt to prevent police officers from executing a parole warrant on August 18, 2009.  (See Compl. Exs. E, F.)  The parole warrant was based on the following parole violations:  (1) Brown's arrest and subsequent drug charges on July 22, 2009; (2) Brown's possession of cocaine on July 22, 2009; and (3) Brown's possession of drug paraphernalia on July 22, 2009.  (See Compl. Ex. E.)

Brown's unlawful search and seizure claim is thus barred by Heck for the reasons described in the Supreme Court's example:  If Brown's unlawful search and seizure claims were successful, then his possession of cocaine and drug paraphernalia, and the resulting arrest and criminal charges, would not provide a legal basis for his parole violations and the parole warrant. If there was an insufficient basis for the parole warrant, then Brown's resisting arrest charge would not be based on an authorized arrest.  Thus, Brown's successful prosecution of his unlawful search and seizure claim would necessarily imply that his criminal conviction was wrongful.[3]  Therefore, it is barred by Heck.  See Davis v. Cotov, 214 F.Supp.2d 310, 316 (E.D.N.Y. 2002) (holding that plaintiff's § 1983 claim that his parole violation was based on an improper arrest was barred by Heck because plaintiff had not established that his parole revocation was invalidated in an appropriate state or federal proceeding).

"One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."  Heck, 512 U.S. 484.  Brown's malicious prosecution claim is barred by Heck because his conviction did not terminate in his favor.  The fact that Brown pled guilty to only one charge to satisfy

---

[3]   In some cases, an unlawful search and seizure claim might not "necessarily imply that a prior state conviction was unlawful," such as where "the subject evidence was admissible based on such doctrines as independent source, inevitable discovery, and harmless error."  Williams v. Ontario Cnty. Sheriff's Dep't, 662 F. Supp. 2d 321, 327 (W.D.N.Y. 2009).  This, however, is not one of those cases. There is no suggestion that the drugs, drug paraphernalia, and resulting arrest would be admissible based on those doctrines, or would constitute harmless error.

many does not change this analysis.  See Sealey v. Fishkin, No. 96 CV 6303(RR),1998

WL 1021470, at *4 (E.D.N.Y. Dec. 2, 1998) (holding that Heck barred plaintiff's arrest

without probable cause claim even though plaintiff "pleaded guilty to disorderly conduct,

a lesser charge than the assault for which he was initially arrested").

     A false arrest and imprisonment claim, however, does not inevitably undermine a

conviction, and therefore is not always barred under Heck.  See Covington v. City of New York,

171 F.3d 117, 123 (2d Cir. 1999).  Nonetheless, "the existence of probable cause is an absolute

defense to a false arrest claim."  Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).  Probable

cause "is presumed where an arrest is made pursuant to a valid arrest warrant."  Barcomb v.

Sabo, No. 2011 WL 1770795, at *10 (N.D.N.Y. May 9, 2011).  Accordingly, "unless it can be

shown that the warrant was obtained using fraud, perjury, or the misrepresentation or

falsification of evidence, a claim for false arrest or wrongful imprisonment must fail."  Id. (citing

Katz v. Morgenthau, 709 F.Supp. 1219, 1229 (S.D.N.Y.1989) ("No civil action is available to

plaintiff under Section 1983 for an arrest and subsequent detention made pursuant to a valid

arrest warrant.")).

     Brown does not claim that the August 18, 2009 parole warrant was invalid; he does,

however, attack the validity of the July 22, 2009 search warrant.  The search warrant authorized

the Police Officer Defendants to search (1) Brown's motel room for, inter alia, drugs—

"including but not limited to cocaine"—drug paraphernalia, records, and weapons; and (2) a

target, "Cyrus."  (Compl. Ex. B.)  Brown claims that the Police Officer Defendants knew the

search warrant was "inadequate" because "it was obvious that their informant gave [perjured]

information . . . ," and notes that he was not the intended target.  (See Compl. at 8.)  Brown's

claims, however, are undermined by Brown's admission to his parole officer that he was

"complicit[ ] in the crime" and was using cocaine; and by the fact that a letter and card with the name "Cyrys" written on each was seized from Brown's motel room.  (See Compl. Ex. B at 3, Ex. E.)  Brown's conclusory allegations of perjury are thus insufficient to show the search warrant was invalid.  Since Brown has not plausibly shown that the search warrant was obtained by perjury or fraud, his false arrest and imprisonment claim fails.

Finally, to the extent Brown intended to bring a claim against the Middletown Police Department itself, which is not clear, see Compl. 2-3 (only listing individual officers as defendants), any such claim would fail.  The Middletown Police Department is a non-suable agent of the City of Middletown.  See Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007).  A municipality can be held liable for its employee's § 1983 violation where the violation involves the "execution of a government's policy or custom."  Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978).  Brown has not identified any City of Middletown policy or custom that caused the alleged violation, or alleged that he was injured by any conduct attributable to the City of Middletown.  Furthermore, as detailed above, Brown failed to adequately allege that a City of Middletown employee committed a § 1983 violation.  Accordingly, to the extent Brown intended to bring a claim against the Middletown Police Department or the City of Middletown, any such claim fails.

*4.  Conclusion*

Brown has failed to state a claim against former Governor David Paterson and the Police Officer Defendants.  Accordingly, the Court grants the Police Officer Defendants' motion to dismiss in its entirety, and sua sponte dismisses David Paterson from this action.

## CONCLUSION

The Clerk of Court is directed to close these motions (Dkts. No. 22, 38, 42, 46, 50, and

62) and enter judgment closing this case. Pursuant to 28 U.S.C § 1915(a), I find that any appeal

from this order would not be taken in good faith.

Dated: New York, New York
February 28, 2012

SO ORDERED

PAUL A. CROTTY
United States District Judge

Copies Mailed To:

Mr. Christopher Brown
154 North Miller Street
Newburgh, New York 12550

Mr. Christopher Brown
ID # 00-A-0395
Cape Vincent Correctional Facility
Route 12E
P.O. Box 739
Cape Vincent, New York 13618

Susan Z. Stockburger, Esq.
Orange County Department of Law
255 Main Street
Goshen, New York 10924

William G. Scher, Esq.
Garbarini & Scher, P.C.
432 Park Avenue South
New York, New York 10016

Alex J. Smith, Esq.
6 North Street
Middletown, New York 10940

14

Charles F. Sanders, Esq.
State of New York – Office of the Attorney General
120 Broadway
New York, New York 10271